IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

RANDY S. CAMPBELL,    :
    Plaintiff     :
          :
 vs.        : CIVIL NO. 1:CV-12-1968
          :
CAROLYN W. COLVIN, Acting  :  (Judge Caldwell)
Commissioner of Social Security :
    Defendant   :
          :

*M E M O R A N D U M*

I. *Introduction*

   Plaintiff, Randy S. Campbell, seeks judicial review of a decision denying

him disability benefits under the Social Security Act.  See 42 U.S.C. §§ 401-433.  The

defendant is Carolyn W. Colvin, the Acting Commissioner of Social Security.[1]

   In support of his claim, Campbell alleged several exertional and

non–exertional impairments, but the case comes down to whether he is disabled

stemming from an operation on his right ankle that fused the joint, early degenerative

joint disease of the left knee and lumbar discogenic disease.

   Plaintiff filed his application for benefits on October 27, 2008, alleging an

onset date for disability of September 15, 2008.  (Tr. 194).[2]  Campbell amended the onset

---

  [1] The case had been brought against Michael Astrue, the former Commissioner.
Pursuant to Fed. R. Civ. P. 25(d) and 42 U.S.C. § 405(g), Colvin is substituted as the defendant.

  [2] References to "Tr. ___" are to pages of the administrative record Defendant filed on
December 17, 2012.

date to September 1, 2009.  (Tr. 15, 46).  The ALJ denied benefits on July 23, 2010.

Based on an application made on August 19, 2010, Plaintiff was found to be disabled

beginning on July 24, 2010.  (Tr. 2).  This case thus involves a period of disability of

about eleven months.

Plaintiff argues that the administrative law judge (ALJ) made the following

errors in denying his claim.  First, she did not explain why Plaintiff's impairments did not

meet or equal listing 1.02, major dysfunction of a joint, or listing 1.03, surgical arthrodesis

of a major weight-bearing joint.  Second, her opinion that Plaintiff had the residual

functional capacity to do light work was not supported by substantial evidence.  Third,

she did not apply the proper legal standards in rejecting the opinion evidence of his family

physician and the opinion of a treating physical therapist that supported the conclusion

Plaintiff could not do light work.  Fourth, Plaintiff is disabled under Grid Rule 201.09 when

he is properly considered as only being able to do sedentary work or less.  Fifth, when

posing his hypothetical to the vocational expert, the ALJ failed to include limitations on

Plaintiff's ability to read, write, use language correctly, and make change, so that the

vocational expert's testimony is not substantial evidence of work Campbell can do.

II.  *Background*

A.  *Work, Health and Medical History*

Campbell was fifty-one years old at his alleged onset date.  (Tr. 21).  He

attended regular classes in school (Tr. 40), and left school after completing the ninth

grade (Tr. 39).  He worked as a laborer from 1974 until 2008. (Tr. 266, 223).  At the June

2010 hearing, Plaintiff testified that he was laid off in September 2008 from his last job

because he could no longer do it – lifting manhole covers, big bags of cement, and

climbing in and out of manholes.  (Tr. 59).  However, others were laid off at the same

time as part of a company-wide layoff that became permanent in March 2009.  (Tr. 34).

As part of his October 2008 disability application, in November 2008

function reports, Plaintiff and his wife stated that his activities included the following:

feeding/walking his dog twice a day around the block, preparing meals, cleaning the

house, mowing the lawn, loading the dishwasher, washing laundry, doing a little yard

work, driving a car, shopping for household goods and food, paying bills, counting

change, handling a savings account, and using a checkbook.  (Tr. 228-46).  His hobbies

included watching sports and doing crossword puzzles.  (Tr. 232).  He also spent time

with family members, and went to church, his children's homes, and the movies.  (Tr.

232, 243).  He said he could walk a quarter to one-half a mile and used a cane only "once

in a while."  (Tr. 233-34).

He could not pay attention for "too long" and could not follow written

instructions "100 per cent."  (Tr. 233).   He can add, subtract and do simple arithmetic.

(T. 40).  He sometimes has trouble reading because he does not understand "big words."

(Tr. 40).

Some twenty-seven years ago Plaintiff's right ankle was injured after he

was assaulted by another man at a private club.  (Tr. 60).  He had his first surgery on the

ankle then and over the years it deteriorated.  (Tr. 49, 60).  In March 2009, Dr. Michael F. Mitrick, a treating orthopedic surgeon, diagnosed him with end-stage arthritis of the right ankle and recommended an arthrodesis, a right ankle fusion.  (Tr. 418).  In June 2009, Dr. Mitrick examined Plaintiff.  In addition to his ankle, Plaintiff complained of low back pain and pain running down his right leg.  (Tr. 421).  Plaintiff was able to ambulate and perform activities of daily living.  (Tr. 421).  Dr. Mitrick diagnosed: (1) end-stage arthritis in the right ankle; (2) evidence of early right radiculopathy; (3) early degenerative joint disease of the left knee; and (4) lumbar discogenic disease.  (Tr. 422).  In July 2009, Dr. Mitrick again noted that Plaintiff could ambulate and perform activities of daily living.  (Tr. 423).  Plaintiff's back pain had improved with a prescribed painkiller but other areas of concern remained the same.  (Tr. 423).  The left knee had fairly decent motion and good strength and stability.  (Tr. 423).

On August 28, 2009, Dr. Suzette Song performed the arthrodesis.  (Tr. 428-29).  In a note five days after surgery, Dr. Song noted the corrected ankle position looked good and there was no ankle motion.  Plaintiff was also complaining of severe pain in the right foot and ankle.  (Tr. 426).  In a note a week after surgery, Dr. Song noted the ankle position was still good and no motion was found.  (Tr. 427).  In a note three weeks after surgery, Dr. Song noted that the position remained good with no motion and sensation was intact.  (Tr. 430).

Plaintiff testified at the June 2010 hearing that following the surgery (since September 2009), his ankle has been swollen all the time and he has had pain in his

-4-

ankle every day, all day long.  (Tr. 49).  He walks with a limp.  (Tr. 49).  His lower back

hurts all the time.  (Tr. 49-50).  He cannot lift heavy items.  (Tr. 64).  He drives his wife to

the grocery store, but she does the shopping.  He will carry light bags.  (Tr. 65).  In regard

to housework, he runs the sweeper once and a while but his wife does a lot of it.  (Tr. 65).

His wife mows the grass or they hire someone to do it.  (Tr. 71).  Their house is two

stories and he tries to avoid going up the stairs too often.  (Tr. 65).   During the day, he

lies on a recliner chair, up to seven hours a day, and sometime stays there all night

because it would be too painful to go upstairs.  (Tr. 56, 70).  He has given up on fishing

and playing sports.  (Tr. 66).

On November 19, 2009, some three months after the operation, Dr. Song

examined Plaintiff.  Plaintiff reported right ankle pain on a daily basis, especially when

sitting for extended periods.  Dr. Song noted swelling was improved but still present.  (Tr.

435).  An X-ray of the ankle showed a well positioned and coaptated ankle joint with the

screws in good position.  The fusion looked good.  (Tr. 435).

On December 3, 2009, Plaintiff was seen by a physical therapist for

potential treatment by way of physical therapy.  (Tr. 442).  At that time, he was

complaining about pain in the right ankle and leg and bilateral knee pain.  (Tr. 442).  He

denied any distal lower extremity numbness or paresthesia.  (Tr. 442).  He reported that

standing on his legs for as little as ten minutes significantly increased his symptoms, that

it was difficult to walk on uneven surfaces, to walk longer than ten minutes, or climb

stairs.  (Tr. 442).  Plaintiff had good flexibility of the right hamstrings, was able to transfer

from a sit to stand with handrail assistance, was able to stand on a level surface, demonstrating knee flexion and extension for weight shifting onto the right lower extremity to control balance.  On December 10, 2009, Plaintiff saw Dr. Ann L. Ramage, his family physician who has been treating him for fifteen years.  (Tr. 45).  Plaintiff reported right ankle pain and lower back pain.  She noted ankle swelling.  (Tr. 457-58).

Plaintiff started weekly physical therapy.  (Tr. 442-450).  Subsequent reports on that therapy revealed the following.  On December 28, 2009, Plaintiff was able to achieve heel strike and foot flat while ambulating but was unable to perform push-off. On December 30, 2009, Plaintiff reported he uses his cane only seldomly when the pain is increased.  (Tr. 449).  Overall, Plaintiff noticed that therapy resulted in improvements, including reduced pain and increased tolerance on his feet.  (Tr. 449).  He also stated his lower extremity had not given way since the operation.  (Tr. 449).  On January 5, 2010, Plaintiff reported that the mobility of his ankle had improved since beginning physical therapy.  (Tr. 452).

On February 2, 2010, Plaintiff was discharged from physical therapy in the office to a home exercise program.  Plaintiff still complained of ankle and forefoot pain, pain while walking without shoes, and an inability to walk on all surfaces without significant loss of balance.  (Tr. 553).  Plaintiff reported that he had not made significant progress with regard to his pain symptoms.  (Tr. 553).  He did believe the therapy increased his strength.  (Tr. 553).  The physical therapist noted an inability to walk on uneven surfaces and that Plaintiff could climb stairs but had to use two handrails for

assistance.  (Tr. 553).  Plaintiff could continue to walk on even surfaces but with significant compensation on the right ankle.  (Tr. 553).

On March 4, 2010, Plaintiff was seen by Dr. Song.  Plaintiff reported swelling after being on his feet for over an hour.  (Tr. 507).  He also complained about numbness at the toes.  (Tr. 507).  Dr. Song noted that: swelling was improved but still present and that the wound was nicely healed, the corrected ankle position remained good, he had weak calf strength and unchanged sensation, and his dorsal foot numbness was unchanged.  (Tr. 507).  Dr. Song stated he could increase his activities as tolerated. (Tr. 507).

On April 5, 2010, Plaintiff was seen by Dr. Mitrick.  Plaintiff reported bilateral knee and lower back pain and right ankle swelling, without numbness or tingling.  (Tr. 505).  He also reported "some ankle discomfort."  (Tr. 505).  On examination, Plaintiff was "actually walking fairly good" but had "a bit of a limp."  (Tr. 505).  His sensation was grossly intact to light touch and his coordination was normal.  (Tr. 505).  "In the seated position, neurologically, he [was] clean."  (Tr. 505).  He was "able to ambulate and perform activities of daily living."  (Tr. 505).  He had minimal bilateral patellofemoral crepitus of the knees.  (Tr. 505).  Dr. Mitrick's diagnosis was low back pain, lumbar discogenic disease, and early degenerative joint disease in the left knee.  (Tr. 506).  Dr. Mitrick gave him a corticosteroid injection in the left knee, and he was started on physical therapy for his low back pain.  (Tr. 506).

On April 13, 2010, Dr. Ramage filled out a check-box form for work-related physical activities.  Dr. Ramage also examined Plaintiff and found that he had slight swelling in the ankle and in the left knee, the latter from the steroid injection.  (Tr. 496). On the form, Dr. Ramage stated that Plaintiff could lift ten pounds occasionally and carry ten pounds occasionally.  (Tr. 471).  She said that he could sit for one hour at a time in an eight-hour workday, stand for one hour at a time in an eight-hour workday, and walk for forty-five minutes at a time in an eight-hour workday.  (Tr. 472).  She also stated that Plaintiff could sit for two hours total in an eight-hour workday, stand for one hour total in an eight-hour workday, and walk for forty-five minutes total in an eight-hour workday.  (Tr. 472).  She stated he would need to lie down for the remainder of the day.  (Tr. 472).  She stated he needed a cane to ambulate but that he could ambulate two blocks without a cane.  (Tr. 472).  He could occasionally climb stairs and ramps, (Tr. 474), and occasionally operate a motor vehicle.  (Tr. 475).  He could shop; travel without a companion; ambulate without a wheelchair, walker, or two canes or two crutches; use public transportation; climb a few stairs at a reasonable pace with the use of a single handrail; but could not walk a block at a reasonable pace on rough or uneven surfaces. (Tr. 476).

On April 22, 2010, Plaintiff was seen by Deena Nigro, a Doctor of Physical Therapy.  Plaintiff reported that it was becoming increasingly difficult to walk because of increased hip and knee pain resulting from his right-ankle fusion.  (Tr. 560).  Plaintiff stated the pain in his right ankle decreased since the fusion but that the change in his gait

from the operation has caused increased pain in his hip, knee and lower back.  (Tr. 560).

He stated that pain prevents him from walking more than a mile but that depending on

the day he could walk .25 mile.  (Tr. 560).  The pain prevents him from sitting or standing

more than one hour.  (Tr. 560).  Plaintiff admitted that he could perform most of his

homemaking and job duties but pain prevented him from performing more physically

stressful jobs, such as lifting or vacuuming.  (Tr. 560).

On examination, Plaintiff's bilateral knee range of motion was within

functional limits.  (Tr. 560).  He was observed walking outdoors on a paved surface for

fifteen minutes on level, uphill, and downhill surfaces, as well as on uneven grassy and

rock surfaces.  (Tr. 560).  His gait was antalgic, but he demonstrated good balance on

rocky and grassy surfaces.  (Tr. 560).  His upper and lower extremity strength was

measured at 4/5 (Tr. 560).

Nigro also completed a functional-capacity evaluation form.  (Tr. 559-61).

Nigro opined that Plaintiff could sit for 34-66% of a workday, stand for up to 33% of a

workday, and walk for up to 33% of a workday.  (Tr. 559).  He could occasionally bend,

stoop, squat, crouch, kneel, crawl, climb, reach overhead, and perform repetitive leg/arm

movement.  (Tr. 559).

Nigro also found that Plaintiff "demonstrated the ability to lift 20 pounds

from floor to waist and floor to shoulder on an occasional basis."  (Tr. 561).  "Waist to

shoulder lifting demonstrated the ability to lift 10 pounds safely."  (Tr. 561).  "He did

attempt to complete the 20-pound lift but demonstrated an inability to maintain proper

posture, dropping of the load to the lower shelf, and reported increased pain of 7/8/10. He stated that the weight was to heavy for him to lift." (Tr. 561).  Plaintiff buckled slightly when lifting 10 pounds.  (Tr. 561).  "Gait pattern changes were more evident with the increase in load to 20 pounds."  (Tr. 561).  Nigro concluded that ten pounds was "his maximum safe lift."  (Tr. 561).

On May 26, 2010, Plaintiff saw Dr. Mitrick for numerous complaints. Plaintiff reported no change in his symptoms.  He complained of multiple joints aching, pain in the knees, lower back and in his ankle fusion.  (Tr. 563).  Dr. Mitrick noted that he had seen Plaintiff on April 28, 2010, for neck pain.  At that time, Plaintiff reported "he had been out mulching and got quite intense pain."  (Tr. 563).  Dr. Mitrick wrote that Plaintiff was able to ambulate and to perform activities of daily living.  (Tr. 563).  He also noted that Plaintiff had intact sensation, normal coordination, no edema in the extremities, was in no acute distress and had no numbing or tingling in the calves.  (Tr. 563).

B. *The ALJ's Decision*

In relevant part, the ALJ made the following findings.  First, Plaintiff had "the following severe impairments: "status post ankle fusion, early degenerative joint disease of the left knee, and lumbar discogenic disease."  (Tr. 17).  Second, Plaintiff "does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments, stating "[t]here is no indication that the claimant's physical impairments are associated with sufficient findings to meet any relevant section of Listing 1.00 (Musculoskeletal System) . . . ."  (Tr. 18).  Third, in relevant part:

> the claimant had the residual functional capacity to perform
> light work as defined in 20 C.F.R. § 404.1567(b) with normal
> breaks consisting of one 15 minute break in the morning and
> afternoon and a 30 minute lunch break, except the claimant
> requires alternating sitting and standing at will.  In addition,
> the claimant can occasionally operate levers with his left lower
> extremity and should avoid operating levers with his right
> lower extremity, should avoid climbing scaffold[s] and poles,
> and crawling on hands, knees and feet.  The claimant can
> reach bilaterally overhead occasionally, can sustain
> occasional exposure to extreme cold, wetness, water and
> liquids, should avoid working with vibrating objects and
> surfaces with his bilateral upper extremities, working in high
> exposed places, with sharp objects, and with fast moving
> machinery on the ground.  The claimant also requires a cane
> at all times.

(Tr. 18).  Fourth, the claimant is unable to perform any past relevant work.  Fifth, at fifty-

one years old, the claimant is closely approaching advanced age.  Sixth, the claimant has

a limited education.  Seventh, "[c]onsidering the claimant's age, education and work

experience, and residual functional capacity, there are jobs that exist in significant

numbers in the national economy that the claimant can perform . . . ."  (Tr. 21).  Plaintiff

could be a cashier II, DOT# 211.462-010, or an information  clerk, DOT #237.3670-018.

(Tr. 21-22).

In making these findings, the ALJ did not fully credit Plaintiff's testimony

concerning his limitations and his subjective complaints of pain.  The ALJ relied on

Plaintiff's medical history before the ankle fusion, principally that in June and July 2009,

he was able to ambulate and perform activities of daily living.  She then noted the

following medical entries after the fusion operation.  First, Dr. Song noted the surgery had

a good outcome, the corrected ankle position looked good, there was no ankle motion

-11-

and sensation was intact.  Second, the physical therapists made some positive entries from December 3, 2009, through January 5, 2010.  Plaintiff had good flexibility of the right hamstrings, was able to transfer from a sit to stand with handrail assistance, was able to stand on a level surface, demonstrating knee flexion and extension for weight shifting onto the right lower extremity to control balance.  Plaintiff was able to achieve heel strike and foot flat while ambulating but was unable to perform push-off.  On December 30, 2009, Plaintiff reported he used his cane only seldomly when the pain was increased.  Overall, Plaintiff noticed improvements from physical therapy including reduced pain and increased tolerance on his feet.  He also stated his lower extremity had not given way since the operation.  On January 5, 2010, Plaintiff reported that the mobility of his ankle had improved since beginning physical therapy.

Third, the ALJ relied on Dr. Mitrick's medical records from April 5, 2010.  Plaintiff was "able to ambulate and perform activities of daily living."  (Tr. 505).  Plaintiff reported no numbness or tingling.  (Tr. 505).  His sensation was grossly intact to light touch and his coordination was normal.  Plaintiff was "actually walking fairly good."  (Tr. 505).  "In the seated position, neurologically, he [was] clean."  (Tr. 505).[3]

Fourth, the ALJ relied on physical therapist Nigro's April 22, 2010, functional-capacity evaluation form.  The ALJ interpreted this form as establishing that Plaintiff "was capable of a sedentary to light range of work and . . . tested at competitive

---

[3]  The ALJ described this entry as Plaintiff "was neurologically intact."  (Tr. 20).

ratings for standing and horizontal reaching and multilevel axial rotation reaching on occasional basis." (Tr. 20).

Fifth, the ALJ pointed to Plaintiff's May 26, 2010, visit with Dr. Mitrick. Dr. Mitrick noted that he had seen Plaintiff on April 28, 2010, for neck pain. At that time, Plaintiff reported "he had been out mulching and got quite intense pain." (Tr. 563). The ALJ wrote: "The undersigned notes for the record that the claimant's ability and willingness to mulch are inconsistent with the severity of limitations and pain reported by the claimant." (Tr. 20).

The ALJ acknowledged that Dr. Ramage's April 13, 2010, check-box form was evidence that Plaintiff was only qualified "for less than sedentary work based on the claimant's inability to perform standing, walking or sitting for a total of more than five hours in an 8-hour workday . . ." (Tr. 20). However, she discounted Dr. Ramage's opinion because it "overstate[d] the claimant's limitations as evidenced by the medical findings, his activities of daily living and the fact that the claimant reported improvement with physical therapy." (Tr. 20). The ALJ elsewhere identified Plaintiff's daily activities as cooking, cleaning, shopping, and  caring for his dog without significant limitations. (Tr. 17).

The ALJ also discounted Nigro's April 22, 2010, functional-capacity evaluation form. According to the ALJ, this form supported Plaintiff's ability to do sedentary to light work, but the ALJ gave it "partial weight as the claimant's inability to lift more than 10 pounds is not supported by the claimant's improvement with treatment, his

ability to perform exercise during physical therapy  and his own reports of mulching.  In addition, there is no indication that a treating physician has assessed the claimant with work-related limitations based on their observations and findings."  (Tr. 20).

Plaintiff filed a request for review of the ALJ's decision with the Appeals Council.  The request was denied.

III.  *Standard of Review*

The Appeals Council's denial of Plaintiff's request for review made the ALJ's decision the decision of the Commissioner.  *Poulos v. Commissioner of Social Security*, 474 F.3d 88, 91 (3d Cir. 2007).  It is therefore the ALJ's decision we review.  In doing so, we review the ALJ's application of the law de novo, *id., and* we review the ALJ's factual findings to see if they are supported by substantial evidence.  *Id.* (citing in part 42 U.S.C. § 405(g)).  Generally, substantial evidence has been defined as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005)(quoted case omitted).  It is "'more than a mere scintilla but may be somewhat less than a preponderance of the evidence.'"  *Id.* (quoted case omitted).

We must uphold factual findings supported by substantial evidence.  *Fargnoli v. Massanari,* 247 F.3d 34, 38 (3d Cir. 2001).  It follows "that we are not permitted to weigh the evidence or substitute our own conclusions for that of the fact-finder."  *Burns v. Barnhart*, 312 F.3d 113, 118 (3d Cir. 2002).  Put another way, we

cannot reverse the Commissioner's decision simply because we might "have decided the factual inquiry differently."  *Fargnoli, supra,* 247 F.3d at 38.

IV.   *Discussion*

    A.   *Whether the ALJ Applied Incorrect Legal Standards in Determining That Substantial Evidence Supported the Finding That Plaintiff Has the Residual Functional Capacity to Perform Light Work*

As noted above, Plaintiff has made five arguments against the ALJ's conclusion that he is not disabled.  We will start with the third one, that she did not apply the proper legal standards in rejecting the opinion evidence of his treating physician, Dr. Ramage, and the opinion of Nigro, a physical therapist.  Plaintiff contends that if the proper legal standards had been applied, the ALJ could not have reached the conclusion Plaintiff could do light work.

As noted, the ALJ rejected Nigro's assessment that the Plaintiff could not lift more than ten pounds, an assessment that would have supported a finding that Plaintiff could perform not light work but something less, sedentary to light work.  The ALJ gave that assessment only partial weight on the bases that it was "not supported by the claimant's improvement with treatment, his ability to perform exercise during physical therapy and his own reports of mulching."[4]

-----

[4]   The ALJ also noted that there was "no indication that a treating physician has assessed the claimant with work-related limitations based on their observations and findings."

Plaintiff argues that "improvement with treatment" and "the ability to perform exercise during physical therapy" do not constitute substantial evidence because they do not say anything about any particular level of functioning.  He also argues that his report that he had been mulching is not substantial evidence because there is no evidence detailing the extent of his mulching.

We agree with Plaintiff that the ALJ's rejection of Nigro's assessment that Plaintiff could not lift more than ten pounds is not supported by substantial evidence.  We agree with the argument that "improvement with treatment" and "the ability to perform exercise during physical therapy" do not constitute substantial evidence because the ALJ did not say how Plaintiff's improvement with treatment or his ability to perform exercise during physical therapy showed that Plaintiff could lift more than ten pounds, when Plaintiff must have the ability to lift twenty pounds occasionally to do light work.

In regard to Plaintiff's report that he had been mulching, we also agree with Plaintiff this is not substantial evidence because there was no evidence detailing the extent of this conduct.  The evidence in the record showing that Plaintiff was mulching is a note by Dr. Mitrick stating that he had seen Plaintiff on April 28, 2010, for neck pain, and at that time, Plaintiff reported "he had been out mulching and got quite intense pain." (Tr. 563).  The mulching might have been for such a brief period that it showed Plaintiff's inability to engage in that conduct rather than his ability to do so.  *See Kelly v. Astrue*, No. 11-CV-738, 2012 WL 3638029, at *11 (E.D. Cal. Aug. 21, 2012)("Plaintiff's admission to performing heavy yard work on one occasion, which resulted in seeking medi[c]al

treatment for pain, is not a clear and convincing reason supported by substantial

evidence . . . [when] there are no details regarding how long Plaintiff attempted to

perform yard work, or the nature of the yard work performed other than it involved

reaching with a trimmer").

        In opposition, the Commissioner argues Nigro's assessment was properly

rejected because, as a physical therapist,  she was not an acceptable medical source,

citing 20 C.F.R. § 404.1513(a), 20 C.F.R. § 404.1527(c), and Social Security Ruling 06-

03p.  Further, although Nigro said that Plaintiff could only lift ten pounds safely, she also

said that Plaintiff could occasionally lift twenty pounds from floor to waist and floor to

shoulder.  The Commissioner notes that while the ALJ found Plaintiff could do light work,

the work was restricted to light work with a sit-stand option, which would require, in the

Commissioner's words, only occasional lifting of twenty pounds, along with frequent lifting

and carrying of ten pounds.

        We reject these arguments.  As Plaintiff points out, they were not part of the

ALJ's reasons for rejecting Nigro's assessment, and it is the ALJ's decision we must

review, not arguments made in the Commissioner's brief.  *See Fargnoli, supra,* , 247 F.3d

at 42 n.6; *Ames v. Astrue*, No.06-CV-2214, 2008 WL 191829, at *4 (M.D. Pa. Jan. 22,

2008)(Caldwell, J.); *Farr v. Colvin*, No. 12-CV-1414, 2014 WL 47379, at *12 n.5 (M.D. Pa.

Jan. 6, 2014)("It is the ALJ's responsibility to explicitly provide reasons for his decision

and the analysis later provided by Defendant cannot make up for the analysis lacking in

the ALJ's decision.").

Additionally, as Plaintiff argues, the ALJ could consider Nigro's opinion pursuant to Social Security Ruling 06-03p since, in the language of the ruling, her opinion only went to "the severity" of Plaintiff's "impairment(s)" and how it "affect[ed] his "ability to function," not to "establish the existence of a medically determinable impairment."

Further, although Nigro did note that Plaintiff could occasionally lift twenty pounds from floor to waist and floor to shoulder, she also said that an attempt to lift twenty pounds demonstrated an inability to maintain proper posture, a dropping of the load to lower shelf and increased pain.  She then concluded he could only lift ten pounds safely.

In regard to the rejection of Dr. Ramage's functional assessment, the ALJ reasoned that Dr. Ramage's opinion "overstate[d] the claimant's limitations as evidenced by the medical findings, his activities of daily living and the fact that the claimant reported improvement with physical therapy."  (Tr. 20).  Plaintiff argues the ALJ's ruling was not based on substantial evidence because "improvement with physical therapy" does not show how Dr. Ramage's opinion that Plaintiff could do less than sedentary work was incorrect.  Plaintiff also argues that the ALJ could not rely on his activities of daily living because he testified, consistent with Dr. Ramage's opinion that he had to lie down about four hours a day, that he had to lie in a recliner chair seven hours a day.

In opposition, the Commissioner argues that the ALJ correctly discounted Dr. Ramage's opinion for the following reasons.  First, a physician's opinion on a check-box form, where the physician need only check a box to indicate her opinion, is weak

evidence at best.  *Mason v. Shalala*, 994 F.2d 1058, 1065 (3d Cir. 1993).  Second, Dr.

Ramage's opinion was internally inconsistent as she opined that Plaintiff did not need a

cane but then opined that a cane was medically necessary.  Third, Dr. Ramage's opinion

was inconsistent with her treatment notes of December 10, 2009, and April 13, 2010,

when she noted right ankle swelling and slight swelling of the ankle, respectively.  Fourth,

Dr. Mitrick is an orthopedic surgeon, and the ALJ was entitled to give more weight to the

opinion of a specialist than to Dr. Ramage's opinion, citing 20 C.F.R. § 404.1527(c)(5).  In

this regard, the Commissioner points to Dr. Mitrick's findings in April 2010 and May 2010,

principally that Plaintiff could ambulate and perform activities of daily living, was actually

walking fairly well, and other clinical observations and tests.

      We disagree with the Commissioner that Dr. Ramage's opinion was

internally inconsistent.  In other respects, we cannot agree with Defendant's position

because, as noted above, we review the ALJ's reasoning, not reasoning supplied by the

Commissioner.  The reasons now advanced by the Commissioner might constitute

substantial evidence, if they were made by the ALJ.  We observe that the ALJ did recite

certain medical findings by Dr. Mitrick before rejecting Dr. Ramage's opinion but referred

only generally to "the medical findings" in support of that rejection, along with unspecified

"activities of daily living."  The medical findings seem to begin with a June 2009

examination by Dr. Mitrick, before the ankle fusion surgery upon which Plaintiff partially

bases his claim of disability.  The ALJ also does not specify the activities of daily living

that support rejection of Dr. Ramage's opinion.[5]  The ALJ was not specific enough in her

reasoning.  *See Cotter v. Harris*, 642 F.2d 706-07 (3d Cir. 1981)(the ALJ must discuss

the evidence specifically and indicate the evidence she accepted, the evidence she

rejected and her reasons for doing so).

B.   *The ALJ Included All of Plaintiff's Credibly Established*
     *Limitations in His Hypothetical to the Vocational Expert*

Plaintiff has also claimed that the ALJ did not include all of his limitations in

the hypothetical she posed to the vocational expert concerning the jobs Plaintiff could do.

The ALJ must include in her hypothetical the credibly established limitations

on a claimant's ability.  *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005).  Plaintiff

asserts the ALJ failed to include Plaintiff's problems with reading, understanding written

instructions, and inability to make change well.  Plaintiff buttresses this argument with a

reference to the reasoning, mathematical and language levels the Dictionary of

Occupational Titles (DOT) lists as requirements for cashier II DOT# 211.462-010, and

information clerk, DOT #237.3670-018.  As noted, these were the two jobs the vocational

expert testified Plaintiff could do given the residual functional capacity the ALJ concluded

he had.

The record shows that Plaintiff went only as far as the ninth grade but did

attend regular classes.  Contrary to Plaintiff's argument, the record does not show that he

_____

[5]   The ALJ identified Plaintiff's daily activities as cooking, cleaning, shopping, and caring for his dog without significant limitations. (Tr. 17).  However, she did not mention them in rejecting Dr. Ramage's opinion.  They also seem to be based on Plaintiff's answers given in his October 2008 disability application before the ankle operation.

testified he had difficulty writing or speaking English, only that he sometimes had difficulty reading because he does not understand "big words."  He can follow written instructions, not just "100 per cent."  Contrary to Plaintiff's assertion, he can count change, he can also pay bills, handle a savings account, and use a checkbook.  He can also add, subtract and do simple arithmetic.  While Plaintiff did not use perfect English on his social security forms or at his hearing, the record does not show that he has limitations that were not conveyed to the vocational expert by the ALJ.  This claim fails.

   C.  *Other Grounds For Relief*

           As noted, Plaintiff has made other claims: (1) the ALJ erred when she did not explain why Plaintiff's impairments did not meet or equal listing 1.02, major dysfunction of a joint, or listing 1.03, surgical arthrodesis of a major weight-bearing joint; (2) the ALJ's opinion that Plaintiff had the residual functional capacity to do light work was not supported by substantial evidence; and (3) Plaintiff is disabled under Grid Rule 201.09 when he is properly considered as only being able to do sedentary work or less.

           Since we are remanding the case to the Commissioner for reconsideration of the substantial-evidence claim based on Dr. Ramage's and Mitrick's functional assessments, we will also remand to the Commissioner for her to address why Plaintiff's impairments did not meet or equal listing 1.02 or listing 1.03.  The other two claims are

remanded as well, for resolution in the context of the Ramage-Mitrick substantial evidence claim.

We will issue an appropriate order.


 s/William W. Caldwell
William W. Caldwell
United States District Judge


Date: January 23, 2014